Rapp v. Venable.

---

[No. 1292, August 22, 1910.]

JOHN H. RAPP, Appellant, v. E. B. VENABLE, Probate Clerk, etc., Appellee.

### SYLLABUS.

1. State legislatures have power to regulate or prohibit absolutely the sale of intoxicating liquors and may prohibit the manufacture of them.

2. That construction of a statute which declares the legislative intent, is the proper one.

3. Laws of 1905, Chapter 115, Section 2, providing that "no license shall be issued for such purpose (to establish or conduct a saloon for the vending or sale of spirituous, vinous. or malt liquors within a distance of five miles of any United

States government sanatorium) but this section shall not apply to any saloon previously established," does not create a monopoly and is not contrary to the 14th amendment of the Constitution of the United States.

4. Laws of 1905, Chapter 115, Section 2, operates to discontinue, upon their expiration, licenses within the prohibited limit in existence at the time of the passage of the act.

5. Laws of 1905, Chapter 115, Section 2, is not a local and not a special act and not void under the Springer Act.

Appeal from the District Court for Grant County before FRANK W. PARKER, Associate Justice. Affirmed.

FRED C. KNOLLENBURG for Appellant.

Laws of 1905, chapter 115, section 2, is unconstitutional. Organic Act, secs. 7 and 17; R. S. of U. S., sec. 1851; 10 Current Law 418; Zanone v. Mound City, 103 Ill. 552; State ex rel. Galle v. N. O., 113 La. 371, 36 So. 999; Allgeyer v. State of La., 165 U. S. 579; in re Jacobs, 98 N. Y. Supp. 98.

Laws of 1905, chapter 115, section 2, creates a monopoly. Tugman v. City of Chicago, 78 Ill. 405; Moore v. City of Danville, 1908, 232 Ill. 307, 83 N. E. 845; State ex rel. Galle v. N. O., 1904, 113 La. 371, 36 So. 999; Beebe v. State, 6 Ind. 501, 63 Am. Dec. 391; Town of Elba v. Rhodes 1905, 142 Ala. 689, 38 So. 807; Town of Manderville v. Band. 1904, 111 La. 806, 35 So. 915; C. L. 1897, sec. 3774; Duncan v. Mo., 152 U. S. 377, 382; Philbrook v. Newman, 85 Federal 139, 143; State v. Catigan, 50 Atl. 1079, 1081, 73 Vt. 245; Sunderland's notes on U. S. Const. 728, 733; Cooley's Const. Law (Student's Series) 248; Connolly v. Union Sewer Pipe Co., 184 U. S. 540; ex-parte Deeds, 87 S. W. 1030; Sam's v. St. L. & M. R. R. Co., 73 S. W. 686; State v. Redmon, 114 N. W. 137; N. Y. Sanitary, etc., Co. v. Dept. Pub. Health, 70 N Y. Sup. 510; Union Saw Mill Co. v. Felsenthal, 85

Ark. 346, 108, S. W. 217; ex parte Woods, 108 S. W. 1171; Cooley's Const. Lim., 6 ed., 481, 483.

The police power of the state must be exercised in subordination to the Federal Constitution. Sunderland's notes on the U. S. Constitution 611, 716, 717; Cooley's Constitutional Law (Student's Series) 251; People v. Warden of Prison, 39 N. E. 689, 144 N. Y. 529; Mugler v. Kansas, 123 U. S. 661; in re Wilshire 103 Federal 620; Logan & Bryan v. Postal Tel. & Cable Co., 157 Federal 570; State v. Redmon, 114 N. W. 137; Iler v. Ross, 90 N. W. 869, 57 L. R. A. 895; Priewe v. Wis. Land & Imp. Co., 79 N. W. 780, 103 Wis. 537; Tiedeman State & Federal Control, sec. 3; L. S. & M. S. Ry. Co. v. Smith, 173 U. S. 684; State v. Chittenden, 107 N. W. 500-517, 127 Wis. 468; State v. Walker, 92 Pac. 775; State v. First Nat. Bank, 51 N. W. 587; 2 S. D. 568.

Laws of 1905, chapter 115, section 2, is local and special legislation and contrary to the Springer Act. Black's Law Dictionary; Codlin v. Kohlhousen, 9 N. M. 565-575, 58 Pac. 499-502; Kehr v. Turner, 1908, 107 S. W. 1064; Clark v. Finley, 54 S. W. 343, 345, 93 Tex. 171; 5 Words and Phrases 4208; Title, etc., Co. v. Kerrigan, 88 Pac. 356-365, 150 Cal. 289; State v. Walsh, 37 S. W. 1112, 1113, 136 Mo. 412.; Kerrigan v. Force, 68 N. Y. 381; Dundee Mortgage, etc., Co. v. School District No. 1, C. C. 21 Fed. 151; Rambo v. Larrabee, 73 Pac. 915, 67 Kan. 634.; Kansas v. City of Lawrence, 100 Pac. 485, 494; Topeka v. Gillett, 4 Pac. 800, 803, 32 Kan. 431; People v. R. R. Co., 23 Pac. 303, 83 Cal. 393; People v. Election Commissioners of Chicago, 77 N. E. 321, 325, 221 Ill. 9; Van Geisen v. Bloomfield, 47 N. J. Law 442; Park Commissioners v. Chicago, 74 N. E. 771, 216 Ill. 54; Marsh v. Hanley, 43 Pac. 975, 111 Cal. 368; Sutherland St. Const., sec. 129; Thomas v. Wabash, etc., Co., C. C., 40 Fed. 126; State v. Thomas, 39 S. W. 481, 138 Mo. 95; State v. Bliler, 39 S. W. 1117, 138 Mo. 139; in re Branch, 57 A. 431, 70 N. J. L. 537-576; Noel v. People, 58 N. E. 616, 187 Ill. 587; De Hart v. Atlantic City, 43 Atl. 742, 63 N. J. L. 223; in re Fagan, 57 Atl. 469, 70 N. J. L.

Rapp v. Venable.

341; State v. Jackson, 89 Mo. 237, 1 S. W. 307; Thomas v. Wabash, etc., Co., 40 Fed. 126.

Colin Neblett and Wilson & Walton for Appellee.

The legislature may regulate or may absolutely prohibit the sale of intoxicating liquors without violating the fourteenth amendment to the Constitution of the United States. Crowley v. Christensen, 137 U. S. 86; Gray v. Conn., 159 U. S. 74; Beer Company v. Mass., 97 U. S. 25; Bartemeyer v. Iowa, 18 Wall. 129; Mugler v. Kansas, 123 U. S. 623; Kidd v. Pearson, 128 U. S. 1; Organic Act; State of Oregon v. Richardson, 85 Pac. 225, 8 L. R. A., n. s. 362, 48 Or. 309; U. S. v. Ronan, 33 Fed. 117; Decie v. Brown, 167 Mass. 290, 45 N. E. 765; State v. Stovall, 103 N. C. 416, 8 S. E. 900; Meyer v. Baker, 120 Ill. 567, 12 N. E. 79; Commonwealth v. Petri, 28 Ky. Law 940, 90 S. W. 987; in re Kessler, 163 N. Y. 205, 57 N. E. 402.

Laws of 1905, chapter 115, section 2, is not special or local legislation such as is prohibited by the Springer Act. Codlin v. Kohlhousen, 9 N. M. 565; Decie v. Brown, 167 Mass. 290, 45 N. E. 765; Iler v. Ross, 64 Neb. 710, 57 L. R. A. 895, 90 N. W. 869; River Rendering Co. v. Behr, 7 Mo. App. 345; Smiley v. MacDonald, 42 Neb. 5, 27 L. R. A. 540, 60 N. W. 355; State v. Currans, 111 Wis. 431, 56 L. R. A. 252; Grumbach v. LeLande, 98 Pac. 1059.

A police regulation discriminating in favor of saloons already established, is not unconstitutional. City of New Orleans v. Charles Smythe, 116 La. 685, 41 So. 33, 6 L. R. S., n. s. 722.

STATEMENT OF THE CASE.

The appellant applied for a license to vend liquors at retail in the town of Central, Grant County, New Mexico, but was refused the license by the appellee, who based his refusal on the ground that the saloon was "within five miles of a United States Government Sanatorium" and was not "one previously established," and was, therefore, within section 2, chapter 115, Laws of 1905, which provides:

Rapp v. Venable.

"It shall be unlawful for any person, company or corporation to establish or conduct a saloon for the vending or sale of spirituous, vinous, or malt liquors within a distance of five miles of any United States Government Sanatorium, or within a distance of two miles of any military reservation in New Mexico, or within one mile of the established boundaries of the New Mexico College of Agriculture and Mechanic Arts, or within one-half mile of the University of New Mexico or the School of Mines, and no license shall be issued for such purpose, but this section shall not apply to any saloon previously established."

The appellant brought suit in mandamus, by which he sought to compel the appellee, in his official capacity, to issue a license to him upon his application. In the return of the appellee to the alternative writ and petition filed in this cause, to the effect that the place and building, in and for which appellant requested the issuance to him of a license for the vending of liquor, was within a distance of five miles of a United States Government Sanatorium, was not denied by plaintiff below, no reply whatever having been filed by plaintiff to defendant's return. The existence of the facts thus alleged is also assumed in appellant's assignment of errors and brief herein, and the attack upon the rulings of the lower court is made solely upon the ground of the unconstitutionality of the act upon which appellee based his refusal to issue the license.

Upon the trial in the court below a peremptory writ of mandamus was denied and the cause was dismissed. From this judgment the plaintiff below appealed to this court.

### OPINION OF THE COURT.

McFIE, J.—The assignments of error, though several in number, raise but one question for the consideration of this court, and that is the unconstitutionality of the act of the Territorial Legislature above referred to.

The court below having upheld the act of the Legislature, its decision is attacked as erroneous for two reasons. First, the act creates a monopoly and is therefore void under section 1 of the 14th amendment to the Constitu-

tion of the United States; and second, because it is in violation of chapter 818 of the Acts of Congress of 1886, 24 U. S. Statutes at Large 170, commonly known as the "Springer Act," prohibiting the enactment of special or local laws in certain cases.

The provision of the 14th amendment to which reference is made is as follows:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

That the Constitution of the United States applies to the territories, as asserted by counsel for appellant, is true; and if the act of the legislature above referred to is in violation of the terms of the 14th amendment thereto, it must give way as a void enactment.

The vice alleged to exist in the Territorial act is found in the closing sentence of section 2, "but this section shall not apply to any saloons previously established." It is urged that the use of the words *"previously established"* creates a monopoly and therefore deprives appellant of the equal protection of the laws. Unless this provision of the act, when properly construed, necessarily accomplishes this result it is not perceived in what manner this act could be obnoxious to the 14th amendment, as the evident purpose of the act is to prohibit the establishment and licensing of saloons within five miles of *any* United States Sanatorium and within certain distances of military reservations and the territorial educational institutions. The exercise of the police power under the enactment of similar laws for the benefit and protection of educational institutions has been sustained by the courts in a large majority of the states and we see no valid or constitutional objection to the application of such laws for the benefit and protection of a Sanatorium of the United States.

Under the Organic Act, which stands as a constitution for this Territory, the power of the legislature extends to all rightful subjects of legislation, not inconsistent with

the Constitution and laws of the United States. Organic Act, Sec. 7.

In many respects the legislature of New Mexico has more power than those of the states as those of the states are subject to many limitations placed upon them by state consitutions that do not exist in the territories.

It has been repeatedly held that state legislatures have power to regulate or prohibit absolutely the sale of intoxicating liquors and may prohibit the manufacture of **1** them, without violating the 14th amendment to the Constitution of the United States, and it has been furher held that such statutes do not deny the equal protection of the laws or abridge the privileges or immunities of the citizen, nor do they deprive any person of life, liberty or property, without due process of law. Bartemeyer v. Iowa, 18 Wall. 129; Beer Co. v. Mass., 97 U. S. 25; Mugler v. Kansas, 123 U. S. 623; Foster v. Kansas, 112 U. S. 205; Kidd v. Pearson, 128 U. S. 1; Crowley v. Christensen, 127 U. S. 86; Gray v. Comm., 159 U. S. 74; Cronin v. Adams, 192 U. S. 114; Lawton v. Steele, 152 U. S. 133.

It was held in United States v. Ronan, 33 Fed. 117, that statutes restricting or prohibiting the sale of intoxicating liquors within certain localities are constitutional.

In Jordan v. Evansville, 163 Ind. 516, an ordinance establishing a four mile limit was declared constitutional. In Webster v. State, 110 Tenn. 505, the court upheld a law forbidding sales of liquor within four miles of institutions of learning.

In Whitney v. Township Board, 71 Mich. 244, the court upheld a law forbidding the sale of intoxicants within one mile of a Soldiers Home.

In State v. Banninger, 110 N. C. 527, the court sustained an act of the legislature of that state prohibiting the sale of liquors within three miles of an Orphans Home.

In Crawley v. Christensen, *supra,* the Supreme Court of the United States, says: "But the possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order and morals of the community. Even liberty, itself, the great-

est of all rights, is not unrestricted license to act according to one's own will. This case states in concise form the basis of the police power and the reasons for the wide range of its application. Regulations such as are above indicated have been most frequently upheld notwithstanding they excepted certain specific persons and business within certain localities from the operation thereof. Decie v. Brown, 167 Mass. 290; State v. Stoval, 103 N. C. 416; Meyer v. Baker, 120 Ills. 567; Comm. v. Petri, 28 Ky. Law 940.

The last case above referred to suggests the proper construction to be placed upon our statute and was based, in part at least, upon facts quite similar to the facts in the case now under consideration.

In the Kentucky case Dan Petri applied to the county court for a license to sell liquors at retail within the district of the Highlands. The license was refused and Petri appealed to the Campbell County Circuit Court in which court his counsel attacked the validity of Sec. 11 of the Statute of Kentucky relating to liquor licenses wherein it provided: "In said district no person without a license from said board (of trustees), except the taverns now existing on the Campbell turnpike road, may set up or engage in the business of retailing or making intoxicating liquors," etc.

It was contended that this law was void because it discriminated in favor of and conferred special rights or privileges upon the owners of taverns situated on the Campbell turnpike road. The Supreme Court of Kentucky in disposing of this contention said:

"The position of appellant, that section 11 is void because it seems to discriminate in favor of and confer special rights upon the owners of the taverns on the Campbell turnpike road, is untenable. This exception was placed in the act merely to protect the rights of the owners of those taverns which were being operated under license at the time the act was passed. The object was to prevent a forfeiture of the licenses then in existence. The exception could only operate until the annual license expired, and it has had no force or effect, since the expiration of one year from the date of the approval of the act of 1872."

The taverns referred to in the Kentucky case were saloons conducted under that name and therefore the attack upon that law was identical with that now being made in the present case. The theory of the appellants in both cases is that the saloons in existence at the time the laws were enacted and which were excepted from the operation created a monopoly and conferred special privileges in that the excepted saloons were authorized to continue in business indefinitely, while other saloons were prohibited. The Kentucky court in its decision exposes the fallacy of that position and at the same time states the solid foundation for the exceptions found in these statutes.

The record in this case does not show that there were any saloons at the town of Central and within five miles of the United States Sanatorium, at Fort Bayard, at the time the law of 1905 was enacted, but it was admitted on the trial in the lower court, that there were two such saloons in the town of Central and within the five mile limit at the time that act was approved, and for the purposes of this hearing, the same admission is made in this court. But admitting that there were two saloons established there at the time and that the act was not to apply to them it does not follow that a monopoly was thereby created. Saloons are licensed in this Territory of which fact the legislature was aware. If two saloons were being conducted in Central we must presume that they were licensed, as none other could lawfully exist there.

It is the duty of this court to sustain the act if by a reasonable and proper construction it can be done. That construction which declares the legislative intent is, of course, the proper one. That the legislature intended to create a monopoly by perpetuating the *previously established* saloons indefinitely, is not fair to the legislature to conclude. It is much more reasonable to conclude that the legislative intent was to recognize the validity of the legally issued licenses, under which such saloons were being conducted during the term of their existence, without any intention whatever to grant a perpetual right of renewal, or of being continued without license. It was

clearly within the legislative power to so provide and the recognition of the validity of existing licenses furnishes a reasonable and just basis for the proviso in the act, and renders untenable the contention of appellant that the act is void in that it creates a monopoly.

It cannot be fairly understood that the reference to saloons in this act is to the building and paraphernalia without regard to the license which is indispensible to its legal existence in this Territory. It is true that in the first part of the section the establishment and conducting of a saloon is forbidden, but toward the close of the same section it is said *"and no license shall issue for such purpose."* Thus making the saloon and its license inseparable. The scope of the act is that no saloons shall be conducted after the passage of the act, nor shall any license be issued for such purpose.

The main purpose of this section of the Act of 1905, was to prohibit the licensing or conducting of saloons within five miles of any Government Sanatorium after the passage of the act, but to avoid the forfeiture of licenses then in existence for which payment has been made, the taking effect of the act was in legal effect postponed as to such licenses; but upon their expiration, under the terms of the act, the clause *"and no license shall be issued for such purpose"* would operate to discontinue them. We cannot assent to the correctness of appellant's contention that the legislature intended to perpetuate the two *previously established* saloons so close to the Sanatorium in an act intended to prohibit saloons within five miles of the institution thus creating a monopoly and discrimination which would render the act not only reprehensible but, doubtless, absolutely void.

We are aware that certain legislative acts regulating the number of saloons which might be established within a given territory have been upheld by the courts as within the legislative power, but we do not believe that the legislature had any such purpose by the insertion of the proviso in the Act of 1905, but, rather, the purpose was to abolish saloons within the five mile limit. The legislature has

this power and the exercise of it is not subject to the objection made.

The second contention of appellant's counsel, as disclosed by both his oral argument and his brief, is that the Act of 1905 is void under the "Springer Act" in that it is a local and special act.

That the act, upon its face, is general we think must be conceded. The fact that there may have been but one United States Sanatorium in the Territory at the time the act was passed would not make the act local or special, unless, by the terms of the act, its provisions could have no application to Sanatoriums thereafter established. The act now under consideration is made specifically applicable to "any United States Government Sanatorium" and therefore is not subject to the objection that it is local or special.

Upon this subject the case of Codlin v. County Commissioners, 9 N. M. 565, is quite instructive. Numerous cases are therein referred to in which the distinction between a general and a local or special act is pointed out.

As illustrating the point above stated, as to there being but one Sanatorium in New Mexico, take the case of State ex rel. Columbus v. Mitchell, 31 Ohio St. 592.

The act in question in that case provided that it should be applicable to "cities of the second class having a population of over 31,000 at the last federal census." In holding this to be a special act the court said, in part:

"Columbus is the only city in the state having the population named, at the last federal census, and the act therefore applies alone to that city, and never can apply to any other."

In State v. Herman, 75 Mo. 340, the court says:

"* * * the act under consideration applied only to cities having a population of one hundred thousand or more. The court expressly referred to the fact that the act was limited to then existing conditions and held the act to be special legislation because it did not permit other cities which might thereafter have a population of one hundred thousand to have the benefit of its provisions."

Cases might be multiplied almost indefinitely making

this distinction the turning point as to whether legislation is general or special, but we will not pursue it further.

It is within the legislative power to classify counties, cities, business and occupations, and where such classification acts are founded upon good and sufficient reasons, are reasonable and of general application within such classification they have been so generally upheld by the courts that it is useless to refer to the authorities.

The act now before the court is undoubtedly founded upon good and sufficient reason, as the purpose of the act in defining limits surrounding Sanatoriums, Military Reservations and educational institutions within which saloons may not exist, is in line with similar legislation in many, if not all of the states.

Nor can this act be declared a local law, in that it operates to perpetuate local saloons previously established, for as we have said, the act does not do this nor is there anything in the act disclosing an intent to accomplish any such result on the part of the legislature.

In our opinion the judgment of the court below sustaining the validity of Sec. 2, Chap. 115, Laws of 1905, was correct and it is therefore affirmed.