ANTONETTA ABBADESSA ET AL. *v.* THE BOARD OF ZONING APPEALS OF THE CITY OF NEW HAVEN

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

Argued June 11—decided July 9, 1947

*William L. Beers* and *Alfred F. Celentano,* with whom, on the brief, was *George G. DiCenzo,* for the appellant (defendant).

*Morris Tyler,* with whom was *Richard H. Bowerman,* for the appellees (plaintiffs).

MALTBIE, C. J. This proceeding is an appeal from the board of zoning appeals of New Haven. The

trial court rendered judgment for the plaintiffs and the defendant board has appealed. The question involves its right to impose conditions upon a grant of permission to use a lot for parking space for the employees of a factory.

So far as necessary for the decision of this appeal, the facts as found by the trial court, briefly stated, present this situation: The plaintiff Antonetta Abbadessa, to whom we shall refer as the plaintiff, owned a lot which, from a time before the adoption of zoning in New Haven, had been used continuously for the storage of material and equipment and the maintenance of an office in connection with the operation of a contracting business. The property was in an area originally in an industrial A zone, but later changed to a residence zone. The use of the premises in connection with the contracting business thereafter constituted a nonconforming use. The lot lies in the middle of a block bounded northerly by Derby Avenue and westerly by Mead Street and a driveway runs from it to the latter street. The Berger Brothers Company owns and operates a factory on the north side of Derby Avenue, apparently in an industrial zone. In 1939 it purchased the rear portion of a lot on the south side of Derby Avenue opposite its factory for use as a parking lot for its employees. This land adjoins the Abbadessa lot and entrance to it is only through a driveway from Derby Avenue. The company now desires to purchase the Abbadessa lot to increase the parking facilities for its employees, to combine it with the parking space previously acquired, and to use both the driveway to that space from Derby Avenue and the driveway to the Abbadessa lot from Mead Street.

The zoning ordinance provides that it is the duty

of the building inspector to enforce its provisions. The record does not show how the matter came before him, but we infer that the plaintiff applied for approval of the use of the lot for parking by employees of the Berger Company, and upon a blank, apparently prepared for use as regards building permits, appears an entry with respect to her application: "Building permit is refused by reason of the following Zoning Restriction: The use of the property . . . appears to constitute a non-conforming use. Confirmation of this non-conforming use is desired from the Zoning Board." The plaintiff appealed from that order to the board of zoning appeals. After hearing the matter it concluded that the use of the premises constituted a nonconforming use, but that the passage of vehicles over the driveway to Mead Street would create a traffic hazard; and it decided to grant the appeal on condition that that driveway be closed and the only entrance and exit be through the driveway to Derby Avenue. The ordinance provides that a nonconforming use may be changed to a use of the same or a higher classification, and in the argument before us it was not questioned that, under this provision, changing the use of the lot from that made in connection with the contracting business to one for the parking of automobiles would be in itself a permissible continuance of the nonconforming use. The plaintiff claims that such a continuance carries with it the right to use the lot in the same way that it had been previously used with an entrance from Mead Street. The defendant contends, however, that the situation falls within another provision of the ordinance which authorizes the board "subject to appropriate conditions and safeguards" to "permit the extension of an existing

commercial or industrial establishment in any district"; that the use of the Abbadessa lot by the Berger Company as a parking space is an extension of its industrial plant; and that the board, in granting the permission for that use, could properly impose the condition it did.

Zoning is concerned with the use of specific existing buildings and lots, and not primarily with their ownership. Metzenbaum, Law of Zoning, p. 14. In *Matter of Monument Garage Corporation* v. *Levy,* 266 N. Y. 339, 344, 194 N. E. 848, it was held that, where the line dividing a business district from a residence district crossed a lot, the portion in the former might be used for commercial parking but that use could not be extended to the part of the lot in the residence zone; and, as regards the erection of an apartment house, a similar decision was reached in *Borinsky* v. *Board of Adjustment of Newark,* 122 N. J. L. 111, 4 A. 2d 53. If a manufacturing company has plants on lots in different zones, the use of each is ordinarily governed by the requirements applicable in the particular zone in which the lot is located. If, for example, one plant exists as a permitted use in one zone and another constitutes a nonconforming use in a second zone, the latter acquires no additional standing by reason of the fact that both are operated by one organization. The fact that each lot is considered as a separate entity appears from the usual provision, contained in fact in the ordinance before us as regards residence zones, that accessory uses are confined to the lot on which the primary use is located. Bassett, Zoning, p. 100.

The situation before us is quite similar to that presented in *First National Bank & Trust Co.* v. *Zoning Board of Appeals,* 126 Conn. 228, 233, 10 A. 2d 691.

The ordinance involved in that case defined a "lot" as a "parcel of land occupied by one building and the accessory buildings and uses customarily incident to it," a very similar definition to that of a "lot area" in the ordinance now before us. The plaintiff, which operated a club on an island connected to the shore by a rope ferry, claimed the right to use a certain tract of land it owned on the shore adjacent to the ferry for the parking of automobiles by its guests. We held (p. 235) that occupancy of the land on the shore could no more be within the intent of the ordinance as an accessory use than would tracts on the opposite sides of a public highway. See *Chayt* v. *Zoning Appeals Board,* 177 Md. 426, 435, 9 A. 2d 747; *Rehfeld* v. *San Francisco,* 218 Cal. 83, 85, 21 P. 2d 419; *Amon* v. *Rahway,* 117 N. J. L. 589, 591, 190 A. 506.

To give to the words "industrial establishment" as used in the ordinance before us the significance claimed by the defendant would mean that it was authorized to permit a unit of a plant or a use accessory to it in any zone, even one most closely restricted to residence purposes; and that could hardly have been intended. The word "establishment" as used in a legislative act has been held to include various business plants united under a single ownership, although separate in place; *Chrysler Corporation* v. *Smith,* 297 Mich. 438, 448, 298 N. W. 87; or the word may refer to each such unit. *Williams Bros. Mfg. Co.* v. *Naubuc Fire District,* 92 Conn. 672, 675, 104 A. 245; *A. H. Phillips Co.* v. *Walling,* 324 U. S. 490, 496, 65 S. Ct. 807, 89 L. Ed. 1095, 157 A.L.R. 876. The meaning of the words "industrial establishment" as used in the ordinance before us must be determined in the light of its provisions as a whole and its intended

purposes. The ordinance contains no suggestion that it is not intended to adopt the usual practice of zoning in dealing with each lot as a separate entity. "One of the essential purposes of zoning regulations is to stabilize property uses." *Strain* v. *Mims*, 123 Conn. 275, 287, 193 A. 754. To give to the words in question the significance claimed would jeopardize this purpose and run counter to the spirit and intent of the ordinance as a whole.

In the situation before us the plaintiff's lot is not only separated from the Berger factory by a street and intervening lots but is in a different zone. We are unable to regard its use for parking by the company's employees as "an extension of an existing commercial or industrial establishment." That use is merely the continuance of an existing nonconforming use and it carries with it all the incidents of that use which appertained to it when zoning was established in the city, including the use of the driveway to Mead Street. The defendant board had no authority to impose, as a condition of its use for parking by the employees of the Berger Company, a requirement that this driveway be closed.

The ordinance does not require a certificate of approval where a nonconforming use is changed to one "of a similar or higher classification." The plaintiff, however, acted reasonably when she sought approval from the official whose duty it is to enforce the ordinance. The charter of New Haven provides that any person "aggrieved by any order, requirement or decision" made by the administrative official charged with the enforcement of the ordinance may appeal to the board of zoning appeals. 19 Spec. Laws 1007, § 6. The refusal to approve the use of the lot for parking purposes was a decision of the building inspector.

It may very well be that the plaintiff, despite that ruling, could have disregarded the order and proceeded to carry on the proposed use of the lot on the ground that the decision of the building inspector concerned a matter over which he had no jurisdiction and that it had no validity. See *Turrill* v. *Erskine*, 134 Conn. 16, 54 A. 2d 494. She acted reasonably, however, in pursuing the remedy of appeal afforded by the charter, and, when the board took jurisdiction on the ground that the use of the lot for parking constituted an extension of an "industrial establishment," she properly appealed to the court. When she appealed to the board, she may be said to have invoked its power to decide whether the proposed use of the lot as a parking space was permissible; but she cannot be held to have thereby so far submitted herself to it as to give it authority to impose conditions for which there is no warrant in the ordinance.

There is no error.

In this opinion the other judges concurred.