IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| H4IT PROPERTIES, LLC, a Washington limited liability company, | ) ) ) | No. 39772-6-III |
| Appellant, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| CHELAN COUNTY, a Washington municipal corporation, | ) ) ) | |
| Respondent. | ) | |

STAAB, A.C.J. — H4IT Properties, LLC (H4IT) purchased a residence in Chelan

County (County) with the intent to use it as a short-term rental. Although the County had

placed restrictions on permits for short-term rentals, H4IT sought a permit as an existing

nonconforming short-term rental. The County denied the permit and a hearing examiner

denied H4IT's appeal. H4IT filed a land use petition (LUPA[1]) challenging the hearing

examiner's decision.

H4IT raises three arguments on appeal, but we consolidate the first two issues in

our analysis. H4IT contends that the hearing examiner misconstrued the legal effect of a

settlement agreement between the County and the previous owners of the property and

---

[1] Chapter 36.70C RCW.

failed to consider evidence that the property had been historically used as a nonconforming short-term rental. H4IT also contends that the superior court erred in failing to articulate the basis for its conclusion that Chelan County's newly adopted regulations on short-term rentals, and its denial of H4IT's application for a short-term rental permit resulted in an unconstitutional taking. We disagree with these claims and affirm.

## BACKGROUND

The following facts are set forth from the hearing examiner's unchallenged findings.

On August 25, 2020, the County adopted "a moratorium on the designation, permitting, constructions, development, expansion, remodeling, creation, locating, and sitting of short term rental uses." Ex. C-001-003.[2] The moratorium was extended twice, but ended on the effective date of the Short-Term Rental code, September 27, 2021. Chelan County Code (CCC) 11.88.290(4)(A)(i). The newly enacted "Short-Term Rental Code" created a permitting system for both new and already existing short-term rentals and provided different requirements for each. *See* CCC 11.88.290. The purpose of this code was "to "establish regulations for the operation of short-term rentals as defined in [c]hapter 14.98, within the unincorporated portions of Chelan County." CCC 11.88.290(1)(B).

---

[2] Exhibit C-001-003 references the previous Chelan County Code located at the end of the Respondent's Brief under Exhibit C.

The property in question is described as a ten-bedroom single-family residence located near Lake Wenatchee in Chelan County. The property is zoned Rural Residential 2.5 (RR 2.5).

Prior to H4IT's purchase, the property had been used by the prior owners as an illegal "lodging facility" with no conditional use permit (CUP). Even prior to the change in zoning laws, the County Code required a lodging facility operating in a zone RR 2.5 to obtain a CUP. The previous owners were told that they did not qualify for an existing nonconforming short-term rental permit.

On October 14, 2020, the County filed a notice of order against the previous owners of the property for using the property as an illegal lodging facility. The prior owners and the County eventually entered into a settlement agreement pertaining to the notice of order. Within the settlement agreement, the previous owners admitted that the property had been used as a lodging facility on one occasion in a manner not authorized by, and in violation of, the Chelan County Code. The previous owners agreed not to operate the property as a short-term rental or lodging facility in the future without first obtaining all permits. They also agreed to notify any future potential purchasers of the property that the property may not be used as a short-term rental or lodging facility "without first obtaining any and all required permits 'which may or may not be granted by the County.'" Clerk's Papers (CP) at 14.

3

H4IT purchased the property on December 30, 2021 and filed an application for a short-term rental permit on December 31, 2021. At the time of H4IT's purchase, the moratorium was still in effect, prohibiting the issuance of new short-term rental permits. Additionally, at the time H4IT purchased the property, it was not being used as a short-term rental.

H4IT's permit application was denied. The hearing examiner affirmed this denial. The hearing examiner concluded that H4IT could not show that the property qualified as an existing nonconforming short-term rental because the previous owners were not operating a legally established rental. The hearing examiner found that H4IT's evidence, that the previous owners earned money and paid taxes in 2020 by renting the property, was not proof that the property was previously used as a nonconforming short-term rental. "Monies earned and taxes paid for an illegal operation does not automatically qualify a new owner as legally operating." CP at 14. In addition, the hearing examiner found that while the settlement agreement resolved the prior code violations, the agreement was not evidence that H4IT was entitled to receive a short-term rental permit.

H4IT filed a LUPA petition in superior court. The superior court affirmed the hearing examiner's decision. Additionally, the court found the land use decision did not violate the constitutional rights of H4IT. H4IT appealed to this court.

On appeal, H4IT challenges the hearing examiner's determination that, since the previous owners operated an illegal lodging facility, H4IT did not qualify for existing nonconforming status. In addition, H4IT contends that the hearing examiner committed clear error in applying the law to the facts when he concluded:

> "To the extent that the Appellant is arguing that the prior, unpermitted and illegal use of the property as a lodging facility justifies the granting of a short term rental permit, the Hearing Examiner rejects this argument as not supported by the Chelan County Code."

Appellant's Br. at 14 (quoting hearing examiner's COL 5; AR 5).

## ANALYSIS

1. STANDARD OF REVIEW

"Judicial review of land use decisions is governed by LUPA." *Whatcom County Fire Dist. No. 21 v. Whatcom County*, 171 Wn.2d 421, 426, 256 P.3d 295 (2011). In a LUPA appeal, this court "sits in the same position as the superior court." *Id*. We do not give deference to the superior court's decision. *Griffin v. Thurston County*, 165 Wn.2d 50, 55, 196 P.3d 141 (2008). Instead, we apply the LUPA standards to the administrative record and hearing examiner's decision, giving deference to the hearing examiner's legal and factual determinations. *Durland v. San Juan County*, 174 Wn. App. 1, 12, 298 P.3d 757 (2012).

5

To set aside a land use decision, the party seeking relief must establish one of six standards enumerated in RCW 36.70C.130(1). H4IT contends it has met two of these standards:

> "(d) The land use decision is a clearly erroneous application of the law to the facts;
>
> . . . .
>
> (f) The land use decision violates the constitutional rights of the party seeking relief.

## 2. EXISTING NONCONFORMING USE

H4IT contends the hearing examiner committed clear error in determining that the property did not qualify for existing nonconforming status. H4IT argues that the hearing examiner erroneously concluded that the settlement agreement prevented it from qualifying as an existing nonconforming use as a short-term rental. H4IT also asserts that the hearing examiner erred when it failed to consider evidence that the property had been lawfully used as a short-term rental in addition to its use as a lodging facility.

The County responds that the settlement agreement allowed the property owners to apply for a permit, but it did not guarantee that a permit would be issued and it was not evidence that the property was being lawfully used as a short-term rental. Additionally, the County contends that H4IT failed to meet its burden of proving an existing nonconforming use and the hearing examiner did not find such use.

Under standard (d), "[a]n application of law to the facts is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Whatcom County Fire Dist. No. 21*, 171 Wn.2d at 427 (internal quotation marks omitted) (quoting *Norway Hill Pres. & Prot. Ass'n v. King County Council*, 87 Wn.2d 267, 274, 552 P.2d 674 (1976)). Under this test, this court defers to factual determinations made by the highest forum below. *Cingular Wireless, LLC v. Thurston County*, 131 Wn. App. 756, 768, 129 P.3d 300 (2006).

"A nonconforming use is a use [that] lawfully existed prior to the enactment of a zoning ordinance, and which is maintained after the effective date of the ordinance, although it does not comply with the zoning restrictions applicable to the district in which it is situated." *Rhod-A-Zalea & 35th, Inc. v. Snohomish County*, 136 Wn.2d 1, 6, 959 P.2d 1024 (1998). As with many counties, Chelan County addresses nonconforming uses in its county code. *See* ch. 11.97 CCC. Chelan County defines "nonconforming" use as a use that "was lawful prior to the adoption, revision or amendment of a zoning ordinance, but which fails by reason of such adoption, revision or amendment to conform to the current requirements of the zoning district." CCC 14.98.1300. Before addressing H4IT's arguments, it is first necessary to differentiate between a lodging facility and a short-term rental under the Chelan County Code.

7

As the party asserting a nonconforming use, H4IT has the burden of showing: "(1) that the use existed before the County enacted the zoning ordinance, (2) that the use was lawful at the time, and (3) that it did not abandon or discontinue the use." *Seven Hills, LLC v. Chelan County*, 198 Wn.2d 371, 398, 495 P.3d 778 (2021).

While acknowledging that the property had been previously used as an illegal lodging facility, H4IT asserted that it had also been used as a lawful short-term rental. The CCC defines lodging facilities as:

> establishments providing transient sleeping accommodations and may also provide additional services such as restaurants, meeting rooms and banquet rooms. Such uses may include, but are not limited to, hotels, motels and *lodges greater than six rooms*, and any overnight accommodation that is rented nightly for fewer than thirty consecutive nights or days and has an occupancy of greater than sixteen persons, including children.

CCC 14.98.1105 (emphasis added). On the other hand, a short-term rental is defined as:

> a commercial use utilizing a dwelling unit, or portion thereof, that is offered or provided to a guest by a short-term rental owner or operator for a fee for fewer than thirty consecutive nights or days, by intent or net effect of nights or days rented. They are commonly referred to as vacation rentals. They are a form of commercial tourist or transient accommodations. Short-term rental units may be whole house rentals, apartments, condominiums, or individual rooms in homes. They are rented as a single lodging unit, do not provide food service, and retain the form and function of a dwelling unit.

CCC 14.98.1691.

Here, the property contained ten bedrooms. Thus, by definition, it has the capability of being used as a lodging facility. It is undisputed that even before the new

8

zoning code was enacted, a CUP was required to legally operate a property as a lodging facility.

H4IT contends that the hearing examiner committed clear error by concluding that the settlement agreement limited H4IT's ability to present evidence of the previous owner's lawful use of the property as a short-term rental. H4IT argues that the hearing examiner denied the permit based on application of CCC 11.88.290(2)(E)(ii)(e). This code prohibits a property from qualifying as a legal nonconforming use if there is a prior unresolved violation. H4IT asserts that this provision does not preclude its permit application because there was no code violation for using the property as a short-term rental and the settlement agreement resolved the violation pertaining to the use of the property as a lodging facility. H4IT reasons that since the settlement agreement only addressed the use of the property as a lodging facility, any use of the property other than as a lodging facility "was deemed nonactionable or not in violation by the County." Appellant's Br. at 23. Finally, H4IT maintains that it produced evidence that the property was used as a short-term rental in addition to being used as a lodging facility, and since this prior use was lawful at the time, the property qualifies as a legal nonconforming use as a short-term rental.

H4IT's logic fails for two reasons. First, the hearing examiner did not base his decision on CCC 11.88.290(2)(E)(ii)(e). The hearing examiner noted that H4IT had received a letter from the County citing this code as a reason for denying the permit. But

9

the hearing examiner did not cite this code in his conclusions of law as a reason for affirming denial of the permit application. Indeed, the hearing examiner noted that the prior violation had been resolved by the settlement agreement, but "[t]he resolution of the code violation is not evidence that [H4IT] is entitled to receive a short-term rental permit." CP at 14.

In addition, the hearing examiner did not preclude H4IT from presenting evidence of a prior use. The hearing examiner considered the evidence presented by H4IT and found that it was insufficient and H4IT failed to meet its burden of showing that the property had ever been used as a short-term rental. The hearing examiner found that the previous owners had used the property as an unlawful lodging facility, that they were told the property did not qualify as an existing nonconforming short-term rental, and "the property was not being used as a short-term rental at the time the current owners purchased the property." CP at 13, 14.

H4IT does not assign error to these findings. *See Seven Hills, LLC v. Chelan County*, 198 Wn.2d 371, 384, 495 P.3d 778 (2021) ("Unchallenged findings of fact are verities on appeal."). Even so, the findings are supported by substantial evidence; most notably the prior owners' admission that the property had been used at least one time as an unlawful lodging facility. H4IT's evidence is vague and does not prove that the

property was used as a short-term rental in addition to being used as a lodging facility.[3]

The hearing examiner, as a fact-finder, was free to find that H4IT's evidence was not

persuasive. *See In re Guardianship of Mesler*, 21 Wn. App. 2d 682, 718, 507 P.3d 864

(2022) ("'[T]he finder of fact is the sole and exclusive judge of the evidence, the weight

to be given thereto, and the credibility of witnesses.'" (quoting *State v. Bencivenga*, 137

Wn.2d 703, 709, 974 P.2d 832 (1999)).

H4IT also contends that by entering into the settlement agreement, the County

implicitly assured the previous owners that all they had to do was obtain the necessary

permits in order to come into compliance. Thus, H4IT maintains that the County violated

the settlement agreement and should be precluded from now asserting that the property

does not meet the standards for a new lodging facility or a short-term rental under the

amended code. The hearing examiner did not find this argument persuasive: "The

settlement agreement between the prior owners and the County cannot be construed as

binding the County to grant a short-term rental permit upon the application by a new

owner after the moratorium has been lifted." CP at 16. H4IT fails to convince us that

this was clear error.

---

[3] The County contends that since the property has 10 bedrooms it is a lodging facility and not a short-term rental, and the terms are mutually exclusive. The hearing examiner noted this argument but did not identify it as a basis for his decision.

Several factors negate H4IT's claim that the County violated the settlement agreement and should be estopped from taking a contrary position. First, H4IT has not shown that it has standing to assert any rights obtained from the settlement agreement. The settlement agreement specifically provided that it was not assignable and did not bind any successors. In addition, the settlement agreement did not guarantee or suggest that a permit would be granted. Instead, the agreement specifically required the previous owners to give notice to subsequent purchasers that the property could not be operated as a short-term rental or lodging facility "without first obtaining any and all required permits, *which may or may not be granted*." CP at 257 (emphasis added). While H4IT contends that the *County* refused to consider its evidence of prior use as a nonconforming short-term rental, nothing in the record suggests that the *hearing examiner* failed to consider H4IT's evidence.

To show an existing nonconforming use, H4IT needed to show that the property was lawfully used as a short-term rental before the amended zoning laws went into effect. *See* CCC 11.88.290(2)(E)(i)(d). After considering H4IT's evidence, the hearing examiner did not find that the property had been used as a lawful short-term rental. Instead, the hearing examiner found that the property had been used as an unlawful lodging facility. From these findings, the hearing examiner concluded that H4IT failed to prove that the property qualified as an existing nonconforming short-term rental. This application of the facts as found to the law was not clearly erroneous.

12

3. CONSTITUTIONAL VIOLATION

H4IT did not raise a constitutional taking claim before the hearing examiner, but did raise the issue in its LUPA petition in superior court. The superior court concluded that "the land use decision does not violate the constitutional rights of the party seeking relief." CP at 350. Before this court, H4IT assigns error to the trial court's failure to articulate its reasoning. Additionally, H4IT contends that "the County's improper processing and subsequent denial of H4IT's STR [Short-Term Rental] Permit resulted in a taking of H4IT's right to use the Property as an STR." Appellant's Br. at 45.

H4IT contends that it is entitled to relief because "the land use decision violates the constitutional rights of the party seeking relief." RCW 36.70C.130(1)(f). This standard presents a question of law, which this court reviews de novo. *Whatcom County Fire Dist. No. 21*, 171 Wn.2d at 426. "'In reviewing an administrative decision, [this court] stands in the same position as the superior court.'" *Habitat Watch v. Skagit County*, 155 Wn.2d 397, 405-06, 120 P.3d 56 (2005) (quoting *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 176, 4 P.3d 123 (2000)).

H4IT argues that the trial court is required to articulate its reasoning when not doing so would hamper review, citing *Housing Authority of Grant County v. Parker*, 28 Wn. App. 2d 335, 535 P.3d 516 (2023). *Parker* is inapposite because it involved an unlawful detainer action completely distinct from a LUPA action. 28 Wn. App. 2d at 337. Because we sit in the same position as the superior court, giving no deference to the

13

superior court's conclusions of law, and considering the issue on a de novo standard, the lack of reasoning by the superior court does not hamper our review.

In circumstances such as this, a taking occurs when regulations prohibit a right that has previously vested through nonconforming use. "'An ordinance requiring an immediate cessation of a nonconforming use may be held to be unconstitutional because it brings about a deprivation of property rights out of proportion to the public benefit obtained.'" *State ex rel. Miller v. Cain*, 40 Wn.2d 216, 218, 242 P.2d 505 (1952) (quoting *Austin v. Older*, 283 Mich. 667, 676, 278 N.W. 727, 730 (1938)). As noted above, a "nonconforming" use is generally a use that is lawful at the time but becomes unlawful with the adoption of a zoning regulation. *See* CCC 14.98.1300. "A nonconforming use is a 'vested' property right that has protections." *Icicle/Bunk, LLC v. Chelan County*, 28 Wn. App. 2d 522, 529, 537 P.3d 321 (2023). A vested right refers only "to the right not to have the use immediately terminated in the face of a zoning ordinance which prohibits the use" and does not "change, alter, extend, or enlarge the existing use." *Rhod-A-Zalea & 35th, Inc.*, 136 Wn.2d at 6-7.

H4IT imprecisely argues that application of the County's nonconforming use code, CCC 11.88.290(2)(E)(ii)(e), to its property constitutes a partial taking. However, H4IT fails to show that the owners of the property ever acquired a vested right to a nonconforming use, i.e., the right to operate the property as a short-term rental. Nevertheless, H4IT asserts that it purchased the property with the understanding and

14

intent to use it as a short-term rental based on the prior owner's use. H4IT's expectations does not create a vested right. The "mere intention or contemplation of an eventual use of land is insufficient to establish an existing use for protection as a nonconforming use following passage of a zoning ordinance." *Anderson v. Island County*, 81 Wn.2d 312, 321-22, 501 P.2d 594 (1972).

H4IT's taking argument fails because it cannot show that it ever obtained a vested right to use the property as a short-term rental through legal nonconforming use. The County cannot take what H4IT never acquired.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, A.C.J.

WE CONCUR:

_____
Pennell, J.

_____
Cooney, J.

15